IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| LATREACE CANNADY, for her minor child R.E.C.,<br><br>       Plaintiff,<br><br>  v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>       Defendant. | CIVIL ACTION NO.: 5:20-cv-2 |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge Geoffrey S. Casher ("the ALJ") denying her child's claim for Supplemental Security Income. Plaintiff urges the Court to reverse for an award of benefits or, in the alternative, remand the ALJ's decision for rehearing. Doc. 16 at 20. For the reasons discussed below, I **RECOMMEND** the Court **AFFIRM** the Commissioner's decision and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

### BACKGROUND

Plaintiff applied for Child's Supplemental Security Income on September 28, 2016, on behalf of her son, R.E.C. ("Claimant"), alleging he became disabled on August 1, 2009. Doc. 14-3 at 13 (R. 71); Doc. 14-5 at 2–6 (R. 157–61). Plaintiff's claim was denied initially and upon reconsideration. Doc. 14-3 at 2–6 (R. 60–64). Plaintiff later amended the alleged onset date to September 28, 2016. Doc. 14-5 at 10 (R. 165). The ALJ also denied Plaintiff's claim for Child's Supplemental Security Income on January 28, 2019, after holding a hearing. Doc. 14-2

at (R. 16–33). The ALJ found Claimant was not disabled under the Social Security Act ("the Act") since September 28, 2016, the alleged onset date. Id. at 33– 34 (R. 32–33). The Appeals Council denied Plaintiff's request for review. Id. at 2–5 (R. 1–4).

Claimant was 10 years old at the time of application and 12 years old when the ALJ rendered his decision. Doc. 14-3 at 13–14 (R. 71–72); Doc. 14-2 at 34 (R. 33). The ALJ determined Claimant had the following severe impairments: ADHD, adjustment disorder, enuresis, disruptive behavior, specific learning disability, and borderline intellectual functioning. Doc. 14-2 at 20 (R. 19).

## DISCUSSION

### I. The ALJ's Findings

Section 1614(a)(3(C) of the Social Security Act ("the Act") sets forth the following special standard for determining whether a child is disabled:

> An individual under the age of 18 shall be considered disabled for the purposes of this title if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(2)(A). Pursuant to the Act, the Commissioner has established a three-step process to determine whether a child meets the definition of disability. 20 C.F.R. § 416.924(a); Coleman ex rel. J.K.C. v. Comm'r of Soc. Sec., 454 F. App'x 751, 752 (11th Cir. 2011).

The first step determines if the child has engaged in "substantial gainful activity." Coleman, 454 F. App'x at 752. If the claimant is not engaged in such activity, then the second inquiry is whether the child has a severe impairment or combination of impairments. Id. If the child's impairment or combination of impairments is severe, then the evaluation proceeds to step three.

The third step requires a determination of whether the impairment or combination of impairment "meets, medically equals, or functionally equals a listed impairment." Id. At step three, the ALJ must evaluate the child's ability to function in six different "domains." Id.; 20 C.F.R. § 416.926a. These six domains include: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a. A child is disabled if he has a "marked" limitation in two of these domains or an "extreme" limitation in one domain. Id. A "marked" limitation seriously interferes with the child's ability to initiate, sustain, or complete activities. Id. An "extreme" limitation very seriously interferes with the child's ability to initiate, sustain, or complete activities. Id. When considering whether a limitation is marked or extreme, the ALJ should compare the claimant's limitations to the typical functioning of other children in the same age group who do not have impairments. Id.

Two domains are at issue in this case: (1) acquiring and using information, and (2) attending and completing tasks. For the acquiring and using information domain, the Regulations state school-age children "should be able to learn to read, write, and do math, and discuss history and science." Id. School-age children should be able to use these skills in academic situations to demonstrate what they have learned. Id. This includes oral and written projects, math problems, achievement tests, group work, and class discussions. Id. In addition, they should use these skills in daily living situations, for example, by reading street signs, telling time, and making change. Id. Children should also be able to use increasingly complex language to share information and ideas by asking questions, expressing their own ideas, and understanding and responding to the opinions of others. Id. Adolescents should be able to

complete further academic assignments like composition, classroom discussion, and laboratory experiments.  Id.  They should be able to use the learned information in daily living tasks, such as going to the store, using the library, and using public transportation without assistance.  Id.  They should be able to comprehend and express simple and complex ideas with increasingly complex language.  Id.  They should learn to apply skills in practical ways that will help when entering the workplace.  Id.

For the attending and completing tasks domain, the Regulations state school-age children should be able to focus attention in a variety of situations, remember and organize school materials, and complete assignments.  Id.  School-age children should be able to concentrate on details, refrain from careless mistakes, change activities without causing distractions, and stay on task.  Id.  They should be able to sustain attention so that they can participate in group sports, read alone, complete family chores, and complete transition tasks.  Id.  Adolescents should be able to pay attention during longer presentations and discussions, maintain concentration while reading textbooks, and independently plan and complete long-range academic projects.  Id.  They should be able to organize materials and plan their time to complete school assignments.  Id.  In preparation for entering the workplace, they should be able to maintain attention on a task for extended periods of time without being distracted by others or distracting others themselves.  Id.

In this case, the ALJ followed this sequential process and determined Claimant had not engaged in substantial gainful activity.  Doc. 14-2 at 20 (R. 19).  At step two, the ALJ determined Plaintiff had the following severe impairments: ADHD, adjustment disorder, enuresis, disruptive behavior disorder, specific learning disability, and borderline intellectual functioning.  Id.  At step three, the ALJ determined Claimant's impairments did not meet or medically equal the severity of a listed impairment.  Id.  The ALJ determined Claimant had less

than "marked" limitations in the following domains: acquiring and using information; attending and completing tasks; and interacting and relating with others. Id. at 26–30 (R. 25–29). The ALJ determined Claimant had no limitations in the following domains: moving about and manipulating objects; caring for yourself; and health and physical well-being. Id. at 31–33 (R. 30–32). Because the ALJ determined Claimant did not have "marked" or "extreme" limitations in any of the domains, the ALJ concluded Claimant was not disabled. Id. at 33 (R. 32).

## II.   Issues Presented

Plaintiff raises two enumerations of error. First, Plaintiff argues the ALJ erred by discounting or not considering various teachers' opinions. Second, Plaintiff argues the ALJ erred by rejecting her own testimony as the Claimant's mother.

## III.   Standard of Review

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence" and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Ingram v. Comm'r of Soc. Sec. Admin., 496

F. 3d 1253, 1260 (11th Cir. 2007).  The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence.  Dyer, 395 F.3d at 1210.  In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards.  Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification.  Cornelius, 936 F.2d at 1146.

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity.  Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard).  If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the court must reverse the decision.  Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982), *overruling by statute on other grounds recognized by* Lane v. Astrue, No. 8:11-CV-345, 2012 WL 292637, at *4 (M.D. Fla. Jan. 12, 2012).

**IV.     Whether the ALJ Improperly Discounted the Teachers' Questionnaires**

    **A.     Discussion of the Sixth-Grade Teachers' Questionnaires**

Seven of Plaintiff's sixth-grade teachers (Thompson, Parker, Buck, Chaney, Lott, Tillman, and Finn) completed NICHQ Vanderbilt assessment questionnaires, in which the teachers assessed Plaintiff in three different areas: symptoms, academic performance, and classroom behavioral performance.  Doc. 14-7 at 59–70, 93–94 (R. 304–314, 338–39).  In considering these questionnaires, the ALJ stated:

> The symptoms noted by the teachers are consistent with the claimant's primary diagnosis of ADHD and the reports there of in the treatment records.  The teachers were fairly inconsistent when evaluating academic performance, with some teachers noting average to above average in all areas with other teachers noting "somewhat of a problem" in the same areas the other teachers found average.  Due to this substantial inconsistency between the records, the

6

> Administrative Law Judge finds this section of the reports of little evidentiary value. In classroom behavior performance, the teachers noted the claimant was "Somewhat of a problem" in more than half sections of this area with average functioning or higher in the other areas.

Doc. 14-2 at 25 (R. 24).

Plaintiff argues the ALJ should not have given little evidentiary weight to the opinions of Claimant's sixth-grade teachers. Doc. 16 at 12. Plaintiff asserts the ALJ mischaracterized the teachers' questionnaires by summarily rejecting them as inconsistent with one another. Id. at 12–13. Plaintiff claims the ALJ failed to properly assess the domains of acquiring and using information and attending and completing tasks because the ALJ failed to give adequate weight to the teachers' findings. Id. at 13.

Defendant argues the ALJ did not summarily reject the sixth-grade teachers' questionnaires because he gave some weight to the symptoms and classroom behavior portions of the teachers' opinions. Doc. 19 at 8. Therefore, the ALJ only rejected the academic performance portion of the questionnaires for inconsistency. Id. Defendant asserts the ALJ's decision to discount this portion of the teachers' questionnaires due to inconsistencies is supported by substantial evidence. Id. at 9. Defendant argues the ALJ adequately discussed the questionnaires because the ALJ concluded the opinions were consistent with Claimant's diagnosis of ADHD. Id. The ALJ later discussed how ADHD affected each of the six domains. Id.

In her Reply, Plaintiff argues reversal is warranted because the teachers' opinions contradict the ALJ's decision. Doc. 23 at 4. Plaintiff argues if the ALJ did credit the portions of the teachers' opinions related to symptoms and classroom behavioral performance, then he still committed error because those portions of the opinion conflict with a finding of less than marked impairments in the attending and completing tasks domain. Id. at 3–4. Plaintiff states the ALJ

7

should not have found the teachers' questionnaires in the academic performance of "little evidentiary value" because other information in the record indicated Claimant struggled in school. Id. at 4. Thus, the ALJ should have found a "marked" impairment in the acquiring and using information domain. Id. at 4–5.

The teachers' opinions are non-medical pieces of evidence. See 20 C.F.R. §§ 404.1513(a), 416.913(a). According to SSR 06-3p, the ALJ "may" consider evidence from "other sources," including teachers' opinions, to evaluate the severity of impairments and how the impairments affect an ability to function. 71 Fed. Reg. 45,593-03 (Aug. 9, 2006);[1] Figuera v. Comm'r of Soc. Sec., 819 F. App'x 870, 872 (11th Cir. 2020) (interpreting SSR 06-3p). In a recent ruling interpreting SSR 06-3p, the Eleventh Circuit Court of Appeals held an ALJ is not required to address "other sources" in his opinion. Figuera, 819 F. App'x at 872.

SSR 09-02p, which specifically addresses childhood disability, states non-medical sources "*can* also be very important." 2009 WL 396032 (Feb. 18, 2020) (emphasis added). This Ruling states the administration will consider non-medical sources when addressing the severity of performance and functioning but does not specify if the ALJ should address these sources in his opinion. Id. Given the Eleventh Circuit's interpretation of SSR 06-3p in Figuera, any failure by the ALJ to fully discuss a teacher's opinion cannot constitute reversible error by the ALJ if the ALJ appears to have considered all evidence in the record. 819 F. App'x at 872; see Dyer, 395 F.3d at 1211 ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision . . . ."); Holland ex rel. West v. Saul, No. 18-CV-25248, 2019 WL

---

[1] SSR 06-3p was rescinded by 82 Fed. Reg. 15,263 (Mar. 27, 2017). However, the parties agree this ruling was in effect at the time of the ALJ's January 28, 2019 ruling due to the date of application. Doc. 19 at 10–11 n.4; Doc. 23 at 6.

7842199, at *6 (S.D. Fla. Oct. 18, 2019) (holding an ALJ did not err by declining to give controlling weight to teacher questionnaires).

Here, the ALJ adequately discussed the sixth-grade teachers' questionnaires. Although the ALJ did not state specifically how much weight he afforded to the questionnaires as a whole, which he need not do, one can infer from the ALJ's discussion of the questionnaires he afforded some weight to the symptoms and classroom behavior sections. Doc. 14-2 at 25. The ALJ clearly rejected the academic performance sections by stating these portions of the questionnaires were of "little evidentiary value." Id.

Plaintiff argues because the ALJ partially credited the questionnaires, he was required to find a "marked" limitation in the acquiring and using information and attending and completing tasks domains. The ALJ did find a limitation in this domain due to the teachers' opinions and other evidence in the record, just not a "marked" limitation. Id. at 27. The Regulations contemplate a child having a limitation in a domain that is less than "marked" if it does not seriously interfere with the child's abilities. 20 C.F.R. § 416.926a. Plaintiff has not demonstrated that acceptance of the symptoms and classroom behavioral performance sections of the questionnaires is necessarily inconsistent with a less than marked limitation in the acquiring and using information and attending and completing tasks domains. Importantly, this Court should not reevaluate the weight the ALJ afforded to the sixth grade teachers' questionnaires, especially because they are a non-medical source. Figuera, 819 F. App'x at 872.

Even if the ALJ were required to expressly address the teachers' questionnaires—and he was not—a decision to afford only some weight to the symptoms and classroom behavior sections and disregard the academic performance sections would be supported by substantial evidence. As the ALJ discussed, the various symptoms and forms of behavior the teachers noted

in the questionnaires are consistent with symptoms of ADHD.  For example, several teachers noted Claimant makes mistakes, is easily distracted by extraneous stimuli, has difficulty paying attention and staying organized, is forgetful, fidgets, talks excessively, blurts out answers to questions, and interrupts.  Doc. 14-7 at 59, 62, 65, 68, 93 (R. 304, 307, 310, 313, 338).  In the classroom behavioral performance section, many teachers noted Claimant had "somewhat of a problem" with following directions, disrupting class, and organizational skills.  Id. at 60, 63, 66, 69, 94 (R. 305, 308, 311, 314, 339).  However, none of the teachers rated any of the classroom behavior categories as "problematic."  Id.  The ALJ then addressed how ADHD affected each of the six domains and Claimant's ability to perform in school.  Doc. 14-2 at 28–33.  The ALJ recognized Claimant's ADHD was an issue when discussing the evaluation of Lisa Fesperman, the school psychologist.  Id. at 27 (R. 26).  The ALJ summarized Dr. Fesperman's discussion of Claimant's difficulties with self-control, staying in his seat, staying on task, and distracting others.  Id.  The ALJ also noted Claimant's ADHD "appeared to be his most significant problem" when discussing the Individualized Education Plan ("IEP").  Id. at 27–28 (R. 26–27).  Thus, the symptoms and classroom behavior sections of the questionnaires appear to be largely consistent with the other evidence in the record.  The ALJ simply concluded all of the evidence showed a less than "marked" limitation in the acquiring and using information domain.  Id. at 27 (R. 26).  Therefore, the ALJ did not err in affording the symptoms and classroom behavior sections of the questionnaires some weight.

As for the academic performance sections, the ALJ is correct the questionnaires contradict each other.  Finn noted Claimant performed above average in reading and average in mathematics and writing.  Doc. 14-7 at 94 (R. 339).  Tillman noted Claimant performed average in reading and writing.  Id. at 69 (R. 314).  Lott noted Claimant performed average in reading.

10

Id. at 66 (R. 311).  In contrast, Chaney rated reading as "problematic," math as "average," and writing as "somewhat of a problem."  Id. at 63 (R. 308).  Parker rated reading and writing as "somewhat of a problem."  Id. at 60 (R. 305).  The ALJ did not err in affording these sections of the questionnaires little weight.

> **B.   Failure to Mention Fourth-Grade Teacher Questionnaires**

Plaintiff further argues the ALJ erred by not mentioning opinions from Plaintiff's fourth-grade teachers (i.e., the February 2017 opinion by teachers Sweat and Peacock and the April 2017 opinion from Maryann Eiland) at all in his opinion.[2]  Doc. 16 at 16.  Plaintiff asserts it is impossible for the Court to provide meaningful judicial review without the ALJ specifically discussing these fourth-grade teachers' opinions.  Id. at 16–17.  Plaintiff states these opinions show Claimant had problems in the acquiring and using information domain and attending and completing tasks domain.  Id. at 16.  In her Reply, Plaintiff argues the failure to address these opinions at all violates SSR 06-3p, which discusses the use of non-medical sources of evidence.  Doc. 23 at 6–7.

Defendant acknowledges the ALJ did not mention the specific opinions of these three teachers but argues this does not constitute error by the ALJ.  Doc. 19 at 10.  Defendant argues an ALJ need not assign weight to non-medical pieces of evidence.  Id. at 11.  The ALJ only must show he considered all of the evidence and provide sufficient detail to explain his ruling, which the ALJ did in this case.  Id. at 11–12.  Defendant also argues the opinions do not support finding Claimant had "marked" limitations in the acquiring and using information domain and the attending and completing tasks domain even if the ALJ erred.  Id. at 12.  As a practical matter,

---

[2]   Sweat and Peacock prepared a single, joint questionnaire, doc. 14-9 at 18–26 (R. 387–95); Eiland prepare her own questionnaire, doc.14-6 at 4–11 (R. 169–76).  Thus, there are two completed questionnaires for the three fourth-grade teachers.

Defendant suggests it made more sense for the ALJ to discuss the recent opinions from Plaintiff's sixth-grade teachers, rather than earlier opinions from the fourth-grade teachers.

As discussed above, an ALJ need not specifically address non-medical sources of evidence under SSR 06-3p.  Figuera, 819 F. App'x at 872; see Dyer, 395 F.3d at 1211.  An ALJ's failure to discuss a non-medical piece of evidence is not error as long as he considered the Claimant's medical condition as a whole and did not broadly reject the claim.  Figuera, 819 F. App'x at 872 (citing Dyer, 395 at 1211).  Thus, the ALJ's failure to mention the non-medical questionnaires by the fourth-grade teachers cannot constitute error by the ALJ.  Other district courts have also found a failure to discuss teachers' opinions is not reversible error.  See, e.g., Cole ex rel. J.G.C. v. Comm'r of Soc. Sec., No. 6:11-CV-1187, 2012 WL 4077233, at *6 (M.D. Fla. Sept. 17, 2012); Cox ex rel. J.J.R. v. Astrue, No. 10-00554, 2012 WL 1094443, at *8–9 (S.D. Ala. Mar. 30, 2012); Reed ex rel. DMR v. Astrue, No. 09-0149, 2009 WL 3571699, at *2–4 (S.D. Ala. Oct. 26, 2009).  The ALJ stated he considered all relevant evidence, which "includes . . . information from other sources, such as school teachers."  Doc. 14-2 at 22 (R. 21).  The Court has no reason to doubt the ALJ considered Claimant's medical condition as a whole, given his detailed discussion of Claimant's medical conditions and educational history.  Cole, 2012 WL 4077233 at *6 ("The failure to discuss specific evidence does not mean that evidence was not considered.").  As Defendant points out, the ALJ likely opted to discuss the sixth-grade teachers' questionnaires rather than the fourth-grade teachers' questionnaires because they provided a more recent account of Claimant's symptoms.  Therefore, the ALJ did not err solely because he failed to mention the teachers' questionnaires.

Additionally, an ALJ need not specifically refer to every piece of evidence in his opinion.  Dyer, 395 at 1211.  The ALJ only needs to explain the weight he affords to "obviously probative

exhibits." See Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (reasoning the Secretary must explain the weight given to "obviously probative exhibits"). Contrary to Plaintiff's argument, the opinions written of the fourth-grade teachers are not "obviously probative exhibits." First, the fourth-grade teachers' questionnaires are not "obviously probative" because they are non-medical pieces of evidence. See Figuera, 819 F. App'x at 872. Second, the questionnaires are not "obviously probative" because they are largely consistent with the ALJ's findings. Thus, the ALJ committed no error in failing to mention the fourth-grade teacher questionnaires.

Even if the ALJ did somehow err by failing to mention the questionnaires, any error is harmless because the questionnaires do not demonstrate Claimant had any marked or extreme limitations in the acquiring and using information domain and the attending and completing tasks domain. Swilling ex rel. L.G.M.W. v. Astrue, No. 1:09CV981-CSC, 2011 WL 2982522, at *3 (M.D. Ala. July 22, 2011) (finding a failure to specifically discuss a teacher's questionnaire harmless error at most). While the questionnaires do not define limitations as "marked" or "extreme" in the exact same way the Regulations do, the fourth-grade teachers' opinions contained in the questionnaires are consistent with less than "marked" limitations in the acquiring and using information domain and the attending and completing tasks domain.

In Bradshaw ex rel. S.G. v. Colvin, the Northern District of Georgia considered a somewhat similar issue where the ALJ failed to acknowledge limitations noted by the child's teachers. No. 1:13-CV-1171, 2014 WL 1415191 (N.D. Ga. Apr. 14, 2014). The district court interpreted a nearly identical teacher questionnaire to the ones completed by the fourth-grade teachers in this case that included five-point rating scale to be applied to 13 categories associated with a particular domain. Id. at *6. The district court concluded a "serious problem" on the

13

questionnaire rating scale corresponded a "marked" limitation as described in the Regulations, while a "very serious problem" on the rating scale corresponded to an "extreme" limitation in the Regulations.  Id.  Consequently, any lower rating on the scale (i.e., "an obvious problem," "a slight problem," or "no problem") would correspond to a less than "marked" limitation.  The undersigned finds this to be a reasonable approach for interpreting the rating scale on the questionnaires from Claimant's fourth-grade teachers in this case.[3]

Here, the teachers did not identify sufficient limitations on their questionnaires to find "marked" or "extreme" limitations in any of the domains.  For the acquiring and using information domain, Sweat and Peacock rated Claimant with a "serious problem" (i.e., "marked" limitation) in only one of ten categories—expressing ideas in written form—and annotated a lower severity (i.e., less than "marked" limitations) for the other nine categories.  Doc. 14-9 at 19 (R. 388).  Eiland did not rated Claimant with a lower severity (i.e., less than "marked" limitations) for all 10 categories.  Doc.14-6 at 5 (R. 170).  For the attending and completing tasks domain, all of the fourth-grade teachers rated Claimant with a lower severity (i.e., less than "marked" limitations) for all 13 categories.  Doc. 14-9 at 21 (R. 390); Doc.14-6 at 6 (R. 171).  In other words, not a single fourth-grade teacher rated Claimant with the equivalent of a "marked" or "extreme" limitation for any activity within the attending and completing tasks domain.   In addition, the teachers noted Claimant "can be very independent when completing assignments"

---

[3]    Like the questionnaires described in Bradshaw, the questionnaires completed by Claimant's fourth-grade teachers are divided into sections that correspond to the six functional domains.  Then, for each domain, the responding party is directed to rate a child's difficulty in various activities pertinent to that domain.  The questionnaires identify 10 activities for the acquiring and using information domain and 13 activities for the attending and completing tasks domain.  The responding party is directed to fill in bubbles on the form, rating the child on each activity, using a five-step rating scale: 1. No Problem; 2. A slight problem; 3. An obvious problem; 4. A serious problem; 5. A very serious problem.  Doc. 14-9 at 19 (R. 388).

and "[h]is reading fluency has greatly improved." Id. The teachers further noted Claimant "always completes his tasks" and "[h]is verbal skills are appreciated." Id. at 26 (R. 395).

Based on this record, any error committed by the ALJ in not discussing the fourth-grade teacher questionnaires would be harmless. For the attending and completing tasks domain, none of the fourth-grade teachers indicated Claimant had a marked or severe limitation in any of 13 relevant activities. Therefore, these opinions would confirm—not contradict—the ALJ's conclusion Claimant had less than marked limitations in this domain. As to the acquiring and using information domain, two teachers concluded Claimant had marked limitations in only one out of ten activities, and the other teacher concluded Claimant had less than marked limitations in all ten activities. Plaintiff has not shown this opinion about a single activity would support a finding of marked limitations for the entire domain. And, even if it could support such a finding, Plaintiff would still not prevail, because Plaintiff must show marked limitations in two domains or an extreme limitation in one. 20 C.F.R. § 416.926a. The fourth-grade teacher opinions simply would not support a finding of marked limitations in two domains or an extreme limitation in one, and, therefore, to the extent there was any error in not mentioning these opinions, it was harmless.

For these reasons, Plaintiff's enumeration of error concerning treatment of Claimant's teachers' opinions is without merit.

## V.     Whether the ALJ Provided Adequate Reasons for Discounting Claimant's Mother's Opinion

Plaintiff argues the ALJ did not provide sufficiently specific reasons to support rejecting Claimant's mother's opinion regarding Claimant's symptoms. Doc. 16 at 17. Plaintiff asserts the ALJ should have summarized the mother's statements and explained why the statements were inconsistent with the other evidence. Doc. 16 at 18. Plaintiff argues the ALJ should have

analyzed the mother's statements when considering each domain. Id. Plaintiff argues the ALJ did not provide the required "explicit and adequate" reasons to reject the mother's testimony. Doc. 23 at 11. Plaintiff states the ALJ should not have generally discussed the evidence and should have specifically identified which pieces of evidence contradicted the mother's testimony when he addressed it in the opinion. Id. at 9–13.

Defendant argues the ALJ properly disregarded the mother's statements concerning the intensity, persistence, and limiting effects of Claimant's symptoms because they were inconsistent with other evidence. Doc. 19 at 14. Defendant describes the medical and educational evidence in the record the ALJ discussed, which contradicts the mother's statements. Id. at 14–16. Because the ALJ sufficiently described these other pieces of evidence, Defendant argues the ALJ did not err. Id. at 16.

When assessing a claimant's symptoms, the ALJ must engage in a two-step process. First, the ALJ must determine whether there is an underlying medically determinable impairment that could reasonably produce claimant's symptoms. 20 C.F.R. § 416.929. Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine how much the symptoms limit the child's functioning. Id. The ALJ rejected the mother's statements as to step two.

In general, credibility determinations are within the province of the ALJ. Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005). However, the ALJ must still provide "explicit and adequate reasons" for rejecting a claimant's—or, in this case, a parent's—subjective testimony about the intensity, persistence, and limiting effects of symptoms. Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002); see 20 C.F.R. § 416.929(c)(3) (stating the ALJ will consider non-medical evidence for child disability cases, like parent's testimony). If the ALJ

does not provide specific reasons for rejecting the testimony, the claimant's testimony must be accepted as true. Wilson, 284 F.3d at 1225.

Contrary to Plaintiff's assertions, the ALJ's adequately discussed and rejected the mother's statements. When evaluating Claimant's symptoms, the ALJ followed the sequential two-step process. At step two, the ALJ concluded, "As for statements about the intensity, persistence, and limiting effects of the claimant's symptoms, they are inconsistent with the finding and observations in the medical evidence of Record and educational records . . . ."[4] Doc. 14-2 at 23 (R. 22). The ALJ then summarized the majority of the medical evidence and educational records at issue in the following two pages. These two pages are devoted to discussing the intensity, persistence, and limiting effects of Claimant's symptoms. Therefore, the ALJ's summary of the medical evidence and educational records provides the basis for rejecting the mother's testimony—namely, that her testimony was inconsistent with the medical evidence and educational records. Id. at 23–25 (22–24). Inconsistency with other record evidence is a sufficiently "explicit and adequate reason" to reject the mother's claims of more serious symptoms. Wilson, 284 F.3d at 1225 (11th Cir. 2002).

Plaintiff argues that because the ALJ referred to pieces of evidence that supported the mother's testimony regarding ADHD symptoms, this section cannot possibly be devoted to discrediting the mother's testimony. Doc. 23 at 9–11. However, the ALJ did not conclude Claimant did not have ADHD, only that Plaintiff had less than "marked" limitations. The discussion of Plaintiff's attention issues and other ADHD symptoms indicate he fully weighed

---

[4]   The ALJ did not specifically identify the "statements" he discussed as the mother's statements. However, Plaintiff does not argue this was error by the ALJ, only that the ALJ did not provide adequate reasons for rejecting the mother's statements. The parties agree the ALJ is referring to the mother's statements in this portion of his decision. Moreover, the record makes it clear the ALJ only could have been referring to the mother's statements because she was the only person to offer such testimony.

all of the evidence, both favorable and unfavorable. While the ALJ could have been clearer in his evaluation of the mother's testimony, this Court should not reweigh the evidence. Dyer, 395 F.3d at 1210. Plaintiff cites no authority for her assertion the ALJ needs to resummarize testimony in his opinion or analyze her statements within each domain.

The ALJ's decision to reject the mother's testimony is supported by substantial evidence. The mother's testimony, if accepted, would potentially support a finding of "marked" limitations in the acquiring and using information domain and attending and completing tasks domain due to his ADHD. The mother testified Claimant was failing certain classes and faced serious issues with reading comprehension. Doc. 14-2 at 48–49 (R. 47–48). She testified Claimant had great difficulties remembering things. Id. at 49–50 (R. 48–49). She also mentioned his physical abilities did not match that of other 12-year old boys. Id. at 51 (R. 50). She testified Claimant had serious focusing problems, and she had to constantly redirect him while he completed homework. Id. at 47–48 (R. 46–47). She stated he could only sit still for a few minutes at a time. Id. at 56 (R. 55).

After the ALJ stated the mother's statements were inconsistent with other medical and non-medical evidence, he summarized other pieces of evidence that contradicted the more serious symptoms the mother described. This evidence shows Claimant had problems with ADHD but supports a finding of less than "marked" limitations, which is what the ALJ ultimately concluded. For example, the McKinney Community Health Center indicated Claimant received good grades in both 2016 and 2018 and had extensive language skills. Doc. 14-2 at 23 (R. 22); Doc. 14-13 at 76, 88 (R. 751, 762). The ALJ noted, "The claimant's counseling records indicate a degree of improvement with treatment and medication." Doc. 14-2 at 23 (R. 22). Importantly, two psychological consultants concluded Claimant had less than

"marked" limitations in the acquiring and using information domain and attending and completing tasks domain. Doc. 14-2 at 25 (R. 24); Doc. 14-3 at 6–9, 19– 22 (R. 64–67, 77–80). The ALJ explained the relevant evidence within each domain, which ultimately supported a finding of less than "marked" limitations in three domains. Doc. 14-2 at 26–30 (R. 25–29). The ALJ's decision to discount Claimant's mother's testimony was supported by substantial evidence, as was the ALJ's finding of less than "marked" limitations in three domains.

In sum, the ALJ did not err in rejecting the mother's testimony describing more serious symptoms, and credibility determinations are typically left to the ALJ's discretion. Moore, 405 F.3d at 1212. A reasonable mind would accept this evidence as adequate to support the ALJ's finding of less than "marked" limitations in the acquiring and using information domain and the attending and completing tasks domain. Ingram, 496 F. 3d at 1260.

## CONCLUSION

Accordingly, I **RECOMMEND** the Court **AFFIRM** the decision of the Commissioner. I also **RECOMMEND** that the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, No. 17-11264, 2020 WL 6039905, at *4 (11th Cir. Oct. 13, 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions

on appeal by failing to file timely, written objections.  Harrigan, 2020 WL 6039905, at *4; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 26th day of February, 2021.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA